(No. 6861. October 27, 1942.)

E. J. MALONE, Respondent, v. BULA MALONE, Appellant.

[130 Pac. (2d) 674.]

W. L. Dunn for appellant.

James R. Bothwell for respondent.

MORGAN, J.—January 19, 1927, respondent, a widower and the father of six married children, united in marriage with appellant, a widow with a family consisting of three sons in their teens. Prior to and at the time of the marriage, respondent was the owner of 419 acres of land in Twin Falls County and two city lots in Twin Falls. Appellant was, and had been prior to the marriage, the owner of a house and lot in Twin Falls.

June 26, 1939, respondent filed a complaint against appellant in the District Court, in and for Twin Falls County, wherein he sought a divorce from her on the ground of extreme cruelty. Appellant answered the complaint and, by way of cross-complaint, charged respondent with extreme cruelty. Both parties sought an adjudication of their property rights.

The trial of the case resulted in findings of fact wherein the court found respondent had been guilty of conduct which resulted in grievous mental anguish and grievous mental suffering by appellant. Conclusions of law were made and a decree was entered awarding appellant a divorce. In the decree the real estate owned by respondent, prior to his marriage to appellant, was adjudged to be his sole and separate property and the real estate owned by appellant, prior to the marriage, was adjudged to be her sole and separate property.

In February, 1928, after the marriage, respondent purchased 80 acres of land in Twin Falls County, for a consideration of $16,500. He paid $500 of the purchase price with money which was his separate property, and $8000 with borrowed money to secure the repayment of which he mortgaged a portion of his separate real estate. Payment of the remaining $8000 was secured by mortgaging the 80 acres of purchased land. $2000 of the mortgage indebtedness, last mentioned, has been paid with community funds. The 80 acres, so purchased and mortgaged, was decreed to be the sole and separate property of respondent.

The trial court found there was due to the community

estate, from the separate estate of respondent, $2000, the amount paid with community funds on the mortgage indebtedness against the land purchased after the marriage. It also found the value of the community personal property, item by item, and the amount of community indebtedness. Among the assets of the community was $400 in money in a bank and certain shares of mining stock of uncertain value.

In the conclusions of law it is recited:

"That by reason of the nature of the said community estate and funds it is impracticable for the court to divide the said community estate and funds of the plaintiff and defendant in kind, except the said 984 shares and a contingent interest in 30,000 shares of the capital stock of the Gold Bottom Mining Company of the community estate of plaintiff and defendant."

Prior to decree respondent had been required to pay, and had paid, $300 for services rendered and to be rendered in the action, by appellant's attorneys. The decree required that an additional $700 be paid, out of the community property, for such services. It also contains the following:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the community property of the plaintiff and the defendant is, after the payment and discharge of all the community obligations of the plaintiff and defendant, the sum of $4,728.70, plus 1,000 sacks of unsold potatoes, * * * *" and the mining stock above mentioned, which stock the court directed should be divided equally between the parties.

The decree contains the following provision:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the value of the community property of the plaintiff and defendant shall be divided equally between plaintiff and defendant; that, either the plaintiff shall assume all the debts of the community of the plaintiff and defendant, due or to become due, and the plaintiff shall pay to the defendant as and for the one-half interest of the defendant in and to the value of the said community property of plaintiff and the defendant the sum of $2,364.35 within sixty (60) days after the date of this decree, and shall sell the said 1,000 sacks of unsold potatoes and pay to the defendant the sum of money equivalent to one-half of the net proceeds of the sale of the said 1,000 sacks of unsold potatoes, plus

$700.00 attorneys' fees, in which event this Court will, upon motion of either party, enter its order awarding all unsold portions of the community property of plaintiff and defendant to the plaintiff, the Court now reserving jurisdiction to enter the said order, * * * *''

Then follows an alternative provision for disposal of the community property and disbursement of the proceeds thereof.

The decree was filed May 29, 1940. May 31, 1940, the judge made an order wherein the following appears:

"IT IS ORDERED, ADJUDGED AND DECREED, as follows:

"1. That the community debts of plaintiff and defendant which have been determined in this action to be:

"Mortgage to the Fidelity National Bank .......... $3,950.00
"Doctor Bills ............................................................. 395.00

"Total .......................................................................... $4,345.00

shall be paid by the plaintiff and the defendant shall be and is hereby relieved from any and all legal liability to pay said debts or any part thereof.

"2. That proceeding under the findings of fact, conclusions of law, and decree entered herein, the plaintiff has paid into the office of the Clerk of this Court the following sums of money:

"One-half the value of the community property $2,364.35
"Additional attorneys' fees allowed by the
    Court ......................................................................' 700.00
"One-half net proceeds of the sale of 1,000
    sacks of potatoes stored on the Beatty place 230.91

"Total ........................................................................... $3,295.26

"3. That the community property of plaintiff and defendant is awarded to plaintiff free and clear from any and all claims of the defendant, and plaintiff's title thereto is adjudged to be quieted against all claims or demands or pretensions of the defendant, who is hereby perpetually estopped from setting up any claim thereto or to any part thereof. Said property is situated in Twin Falls County, Idaho and described as follows, to-wit:" (Then follows a

description of the community property of the parties litigant.)

Appellant has appealed from the decree, except that portion thereof granting the divorce, and in her brief, presents three points, which we will quote and discuss separately.

"1. The eighty acres that was purchased after the marriage, with borrowed money on mortgages in which appellant joined is community property and on a dissolution of the marriage appellant became entitled to an award of one-half thereof, as well as all personal property acquired during the marriage."

Idaho Code Annotated, sec. 31-903, is as follows:

"All property of the wife owned by her before marriage, and that acquired afterward by gift, bequest, devise or descent, or that which she shall acquire with the proceeds of her separate property, shall remain her sole and separate property, to the same extent and with the same effect, as the property of a husband similarly acquired."

Sec. 31-906 provides:

"All property owned by the husband before marriage, and that acquired by gift, bequest, devise or descent is his separate property."

Sec. 31-907 relates to community property. It contains this provision:

"All other property acquired after marriage by either husband or wife, including the rents and profits of the separate property of the husband and wife, is community property, * * * *"

Secs. 31-712, 31-713 and 31-714 contain these provisions:

"Sec. 31-712. In case of the dissolution of the marriage by the decree of a court of competent jurisdiction, the community property * * * * must be assigned as follows:

"1. If the decree be rendered on the ground of adultery or extreme cruelty, the community property must be assigned to the respective parties in such proportions as the court, from all the facts of the case and the condition of the parties, deems just.

"2. If the decree be rendered on any other ground than that of adultery or extreme cruelty, the community property must be equally divided between the parties.

"* * * *

"Sec. 31-713. The court, in rendering a decree of divorce, must make such order for the disposition of the community property, * * * * as in this chapter provided, and, whenever necessary for that purpose, may order a partition or sale of the property and a division or other disposition of the proceeds."

"Sec. 31-714. The disposition of the community property, * * * * as above provided, is subject to revision on appeal in all particulars, including those which are stated to be in the discretion of the court."

■ [I] Assuming, but not deciding, appellant's contention that the eighty acres of land purchased after marriage was community property is sound, she has suffered no loss by the action of the court in awarding it to respondent and requiring him to account to the community for the $2000 paid in partial satisfaction of the mortgage given as a portion of the purchase price. Respondent bought the land for an agreed consideration of $16,500. He paid $500 which was his separate money and $8000 which he borrowed by mortgaging his separate real estate, making $8500 of his separate funds which went into the purchase price and for which, if the court had held the land purchased after the marriage to be community property, he would be entitled to credit against the community. The purchased property was mortgaged for $8000 to secure the balance of the purchase price, after applying respondent's $8500 thereon. $2000 of the purchase price mortgage has been paid with community funds, leaving $6000 unpaid thereon. Thus, it will be seen, if the eighty acres of land purchased after the marriage is community property, the community holds it subject to an unpaid indebtedness of $14,500. The testimony shows the eighty acres of land in question was, at the time of the trial, worth not to exceed $10,000. So, if the court should uphold appellant's contention that the land is community property, her interest therein would amount to considerably less than nothing. Clearly she has no cause for complaint that the trial court, instead of awarding her a community interest in land, subject to indebtedness in excess of its value, made an award to the community, against respondent, of $2000, which was the amount it had contributed toward the payment of the purchase price mortgage. That gave appellant $1000, in cash, which respondent has paid to the clerk of the court for her use and benefit,

in addition to other sums of money the decree required him to pay.

Appellant's second point is:

"2. Upon the dissolution of the marriage appellant became entitled to reimbursement of all increased values on respondent's separate real estate, where that increased value resulted from improvements made during the marriage, as well as reimbursement for her common share of all money paid out from community funds for taxes levied against the separate estate of respondent."

■ [II] The trial court found respondent's separate real property had, during the marriage, been increased in value by structural improvements thereon, amounting, in the aggregate, to $1,957.30. Said improvements were made, in part, by the children of respondent, who were tenants on the farms where the improvements were made. The remainder of the cost was at the expense of the community. The court found community funds were expended, in making the improvements above mentioned, on, and for the benefit of, the separate estate of respondent, in the sum of $584, and that the community estate of the parties litigant was entitled to reimbursement from the separate estate of respondent in that amount. The evidence sustains this finding and we approve it. On dissolution of the marriage, by divorce, the community estate was entitled to be credited, and the estate of the husband charged, with expenditures made from community funds in improvement of his separate property, but not with expenditures voluntarily made, without cost to the community, by his children, who were tenants on the property.

■ [III] Appellant complains of the failure of the court to charge the estate of respondent, and credit the community, with taxes paid on his separate property during the marriage. The court found the rents and profits of the separate property of respondent and a portion of the rents and profits of the separate property of appellant, were used and consumed by the community; that the taxes levied and assessed against the separate property of both parties were paid from the gross returns of crops grown on the farm land owned by respondent, prior to the marriage, and on the eighty acres acquired afterward by purchase; that the farm land owned by respondent prior to the marriage was, during the continuance thereof, leased and the leases

required the landlord to pay the taxes levied and assessed against the land, and the cost of upkeep and maintenance thereof. The eighty acres acquired by purchase, after the marriage, was farmed by respondent with hired help. Sec. 31-907 of the code, heretofore quoted, providing that property acquired after marriage by either husband or wife, including the rents and profits of their separate property, is community property, refers to net rents and profits, and is not to be construed to mean that the gross income from separate property belongs to the community. To hold otherwise would cause the community to, in time, entirely consume the separate estates of the members thereof and would nullify Sec. 31-903 and Sec. 31-906 of the code.

Appellant's third point is:

"3. Appellant is entitled to a monthly allowance sufficient for her maintenance and support in the manner she has been accustomed to live and according to her necessities, limited only by respondent's ability reasonably to pay the same, and the monthly allowance awarded by the court was inadequate for the reasonable necessities and support of appellant and therefore an abuse of the court's discretion."

Sec. 31-706 controls the allowance of alimony. It is as follows:

"Where a divorce is granted for an offense of the husband, the court may compel him * * * * to make such suitable allowance to the wife for her support as the court may deem just, having regard to the circumstances of the parties respectively; and the court may, from time to time, modify its orders in these respects."

During the pendency of the action in the district court respondent was required to pay to appellant, by court order, $110 per month temporary alimony. In the decree he was required to continue to pay said amount to appellant until such time as he had paid to her one-half of the net value of the community property, as found by the court, together with $700 attorney's fees, or until the community property had been sold and the money arising therefrom disbursed as in the decree conditionally provided for. The decree further provides that, after its requirements with respect to division of the community property and the payment of attorney's fees have been complied with, respondent shall pay to appellant, for her maintenance and support, $50.00

per month. Appellant insists the allowance is grossly inadequate and that the action of the court in this particular constitutes reversible error.

[IV] The statute last above quoted requires that alimony shall be allowed "having regard to the circumstances of the parties respectively * * *" The evidence shows that, while respondent is the owner of valuable property, it is mortgaged to secure the payment of a considerable sum of money and that the indebtedness against it has been substantially increased during the marriage. The allowance of alimony, and the amount thereof, are, in the first instance, committed to the discretion of the trial court and will not be interferred with on appeal in the absence of a manifest abuse of discretion. (*Donaldson v. Donaldson*, 31 Ida. 180, 170 Pac. 94; *Smiley v. Smiley*, 46 Ida. 588, 269 Pac. 589.)

The decree appealed from is *affirmed*.

Givens, C.J., and Budge, Holden and Ailshie, JJ., concur.

This opinion was written and agreed upon prior to the death of Morgan, J., on October 16, 1942.