512 P.2d 1317

**Margaret HOUSKA, Plaintiff-Respondent,**

v.

**Joe HOUSKA, Jr., Defendant-Appellant.**

No. 11054.

Supreme Court of Idaho.

Aug. 3, 1973.

Kramer, Plankey, Smith & Beeks, Twin Falls, for defendant-appellant.

Rayborn, Rayborn & Barchas, Twin Falls, for plaintiff-respondent.

McQUADE, Justice.

Margaret Houska and Joe Houska, Jr., were married in August, 1958. They did not live together for the first four and one-half years of their marriage. During

the first two and one-half of those years, Mrs. Houska worked as a clerk for the Idaho Power Company and used all her earnings to support herself. During the next two years, Mr. Houska supported her. Eventually, the couple rented a house and set up housekeeping together. Mrs. Houska gave up her job and devoted herself to housekeeping fulltime. There were no children born of the marriage, although Mrs. Houska's daughter from a previous marriage lived with them until the daughter's marriage. The record does not indicate a pre-marital property agreement between the parties.

According to a January, 1958 financial statement submitted to his bank as part of an application for a loan, Mr. Houska's personal net worth eight months before the marriage, was $400,196.48. This figure included the value of his farm near Hazelton, Idaho, certain stocks and bonds, cash, crops, cattle, feed on hand and farm machinery, minus outstanding liabilities. The parties' major source of income during the marriage was Mr. Houska's farming and cattle feeding operation.

During the marriage the parties maintained a single joint checking account, first at Hazelton, Idaho and later at Paul, Idaho. Apparently most, if not all of the money coming into the hands of the parties, except for Mrs. Houska's wages earned during the years 1959, 1960, 1961, and 1969, was deposited into this account. Out of this single account were paid all expenses of the farming and cattle feeding operation, as well as the couple's living expenses.

Mr. and Mrs. Houska had serious marital problems and eventually Mrs. Houska moved out and began to work again in January, 1969. She kept her earnings separate from the joint checking account and used them to support herself.

On November 12, 1969, Mrs. Houska commenced this action to obtain a divorce and division of the parties' community property. Trial was held November 5, 1970, and on August 24, 1971, the district court granted Mrs. Houska a divorce on the ground of extreme mental cruelty. This appeal is taken from the portions of the findings, conclusions, and judgment relating to the amount and distribution of community property.

The district court made findings as to the assets owned by the parties at the time of trial. It concluded that of these assets, the land, stocks and bonds, and all farm equipment acquired before the marriage were Mr. Houska's separate property. The following is a comprehensive list of all other assets owned by the parties at the time of trial, as found by the district court:

| | Market Value |
|---|---|
| Cash | $ 4,031.04 |
| Cattle | 40,504.40 |
| Crops and Feed | 63,146.21 |
| Farm vehicles, machinery and equipment acquired during the marriage | 13,260.00 |
| Furniture | 750.00 |
| Antiques | 375.00 |
| 1963 Chevrolet automobile | 500.00 |
| TOTAL | $122,566.65 |

The totals in each sub-group were compiled from the district court's list which valued each item separately. The district court found that the farming operation had outstanding liabilities of $64,490.89 at the time of trial. It also found that during the marriage, a granary and cement ditches had been added to Mr. Houska's land, enhancing its value in the amount of $14,000.

The district court denominated the sum of the value of the above-listed assets and the value added to Mr. Houska's land by the ditches and granary as the "gross community estate." The district court determined that the community owed Mr. Houska a credit of $2,458.35 from a transaction in which some of his separate property was traded for the Chevrolet. Subtracting this sum and the outstanding liabilities of $64,490.89 from the gross community estate of $126,566.65, he arrived at a "net community estate" of $69,617.41.

In dividing the net community estate between the parties, the district court award-

ed all the above-listed assets, except the car and the furniture to Mr. Houska. The district court ordered Mr. Houska to pay Mrs. Houska the sum of $34,000, which represented her share of the net community estate. It was further ordered that Mrs. Houska be granted a lien on a portion of Mr. Houska's land to secure payment of the judgment. On appeal, Mr. Houska contends that all the assets comprising the gross estate are his separate property.

In reaching its decision, the district court relied on the doctrine that when separate and community funds are so commingled that it is impossible to trace the source of the funds used to purchase any given asset, all assets purchased with the commingled funds are community property.[1] The district court concluded that such commingling had occurred in the Houskas' checking account, and that thus all the assets purchased during the marriage with funds from that account were community property, including the disputed assets. The commingling doctrine is a special application of the general presumption that all property acquired during marriage is community property.[2] The presumption places the burden of persuasion on the party asserting that certain assets are separate property.[3] That party must prove that the property is separate with "reasonable certainty and particularity."[4] This may be done by accounting evidence as well as by direct tracing.[5]

Mr. Houska chose to rely upon the accounting method employed in the recent Idaho case of Evans v. Evans.[6] This method of accounting involves proving that throughout the marriage, community living expenses consumed or exceeded community income. The district court did not make findings regarding either the amount of

community income over the period of the marriage or the total amount disbursed by the parties for community expenses. It appears from the record that such findings could have been made.

Evidence presented by Mr. Houska indicates that during the marriage, the parties had a net income from all sources, after taxes of $104,259.26. This figure included farm income less depreciation and other expenses, Mrs. Houska's wages, dividends and interest. The major portion of the net income indicated by Mr. Houska was the net income from his farming operation.

In Idaho, the rents and profits of each spouse's separate property are community property.[7] The Idaho Code states that the phrase "rents and profits" of separate property means "income only."[8] The case of Malone v. Malone[9] held that rents and profits as used in the code, refers to *net* rents and profits only. In the *Malone* case, the husband owned real property from which he derived an income. In a divorce action, the wife claimed that the gross receipts from the husband's real property were community property and that the community was entitled to reimbursement to the extent that part of those gross receipts were expended to pay taxes levied on the property during the marriage. In denying the wife's claim for reimbursement, this court stated:

"[I.C.A. § 31–907], heretofore quoted, providing that property acquired after marriage by either husband or wife, including the rents and profits of their separate property, is community property, refers to net rents and profits, and is not to be construed to mean that the gross income from separate property belongs to the community. To hold otherwise would cause the community to, in

1. *Cf.* Rose v. Rose, 82 Idaho 395, 353 P. 2d 1089 (1960).
2. Stahl v. Stahl, 91 Idaho 794, 797, 430 P.2d 685 (1967).
3. Bell, Handbook of Evidence for the Idaho Lawyer, 235 (2d ed. 1972).
4. Stahl v. Stahl, *supra*, note 2, 91 Idaho at 797, 430 P.2d 685.
5. Compare Evans v. Evans, 92 Idaho 911, 453 P.2d 560 (1969), *with* Stahl v. Stahl, *supra*, note 2.
6. *Supra*, note 5.
7. I.C. § 32–906.
8. *Id.*
9. 64 Idaho 252, 130 P.2d 674 (1942).

time, entirely consume the separate estates of the members thereof and would nullify [I.C.A. §§ 31–903 and 31–906]." [10] This statement acknowledges legislative recognition of the rights and interests of individual spouses in the preservation and maintenance of separate property as well as of the interests of the community.

Mr. Houska testified that he estimated the couple's monthly living expenses to have averaged $450. Mrs. Houska testified that the amount was closer to $350. Even assuming that Mr. Houska's figure was correct, a sizeable amount of the community income was not expended for community purposes. Mr. Houska agreed that any of the income not expended by the parties was "plowed right back" into his cattle, feed, and other assets. It would appear, therefore, that the community acquired a substantial right to reimbursement. To the extent that community income was reinvested in Mr. Houska's business, rather than expended for community purposes, the community is entitled to reimbursement.

On remand, the district court is instructed to make findings regarding both the net community income of the parties over the period of the marriage and the amount of community living expenses.

Reversed and remanded for further proceedings in accordance with this opinion.

DONALDSON, C. J., and SHEPARD, McFADDEN and BAKES, JJ., concur.

10. *Id.*, 64 Idaho at 261, 130 P.2d at 678.