645 P.2d 882

**Betty B. MARTSCH, Plaintiff-Appellant,**

v.

**Joseph MARTSCH,
Defendant-Respondent.**

No. 13421.

Supreme Court of Idaho.

April 16, 1982.

Rehearing Denied June 18, 1982.

Brent T. Robinson of Ling, Nielsen & Robinson, Rupert, for plaintiff-appellant.

Charles H. Creason, Jr., of Creason & Creason, Rupert, for defendant-respondent.

McFADDEN, Justice.

Betty Martsch and Joseph Martsch were ceremoniously married on December 29, 1971, in Mazatlan, Mexico. The parties were subsequently divorced on February 26, 1973. In that action the court held there was no community property to be divided. The parties, at the time of the divorce, entered into a hold harmless agreement which provided, among other things, that the parties were each entitled to a one-half recovery on a note owed by Raco Car Wash to husband.

Between the date of this first divorce until some time in 1974, wife resided in Salt Lake City, Utah, and the husband in Heyburn, Idaho. During this period of time the parties visited each other in Salt Lake City and Heyburn, staying with each other overnight. In June 1974 appellant moved to Rupert to live with respondent in a home purchased by respondent, and referred to as the Third East property, one half interest of which was later sold to appellant.

Appellant instituted divorce proceedings in December 1976, alleging that after the February 1973 divorce decree was entered the parties immediately remarried by common law marriage and assumed marital duties. Respondent in his answer denies that the parties were married by common law immediately following the February 1973 divorce and alleges that they lived together as husband and wife at a date later than June 9, 1974, and not before that date.

Trial was conducted in July 1978 and the trial judge, a magistrate found that a com-

mon law marriage was entered into on February 14, 1974; and that certain listed properties were appellant's separate property and certain listed properties were respondent's separate property. In that decree the court initially granted appellant an allowance for attorney fees, which on a later motion were stricken from the decree. An appeal was taken to the district court which court heard the case in an appellate capacity and affirmed the lower court. Appellant wife appealed to this court.

In her appeal to this court appellant presents three issues. (1) That the trial court erred in finding that the common law marriage began on February 14, 1974, instead of February 26, 1973, or at an earlier date than February 14, 1974; (2) that the trial court erred in determining that there was no community property to be divided; and (3) that the trial court erred in not requiring husband to pay all debts of the community up until the decree of divorce was issued, including attorney fees incurred through trial and upon appeal.

The correctness of the trial court's determination of the date of the marriage is crucial to this appeal, in that the property rights of the parties will be determined as of that date.

The trial court found that "a common law marriage came into existence in the State of Idaho between plaintiff and defendant on February 14, 1974, on which date plaintiff and defendant assumed marital rights, obligations, and duties toward each other and intended to be married and ever since said date have been and are husband and wife."

The court found inconclusive appellant's testimony as to events previous to that date. Appellant was unable to supply dates for many of the events she claims support the prior existence of the marriage. Appellant's exhibits, wherein she used her name as Betty Martsch were not conclusive because they came from transactions where she previously used her married name. The court found that there was no evidence or testimony that indicated that these were new indications of marriage rather than an indication of the previous marriage.

The court concluded that these events created a picture of the parties getting back together but were insufficient to establish that the parties intended to or did resume marital rights, duties and obligations. However, appellant testified that in February 1974 she was in Rupert with respondent and left from his place with him to go to Boise for her brother's funeral.

Also, one month later respondent husband received title to the Third East property in Rupert, which was used as the marital domicile thereafter.

■ Although the record establishes a conflict in the evidence, there is sufficient evidence to support the trial court's conclusion. This court recognizes the long established rule that our province is to examine the record in the light most favorable to the judgment and that when findings of the trial court are supported by competent, substantial evidence they are binding and conclusive on appeal. *Olsen v. Hawkins*, 90 Idaho 28, 408 P.2d 462 (1965); *In re Bogert*, 99 Idaho 506, 584 P.2d 1231 (1978); *American Silver Mining Co. v. Coeur d'Alene Mines Corp.*, 94 Idaho 54, 480 P.2d 900 (1971).

Appellant contends that the events preceding the February 14, 1974 date support a presumption of marriage. She further contends that respondent has the burden of proof of showing its invalidity by clear and convincing evidence. Appellant cites *In re Duncan*, 83 Idaho 254, 360 P.2d 987 (1961); *In re Foster*, 77 Idaho 26, 287 P.2d 282 (1955); and *Mauldin v. Sunshine Mining*, 61 Idaho 9, 97 P.2d 608 (1939); in support of her position. Each of these cases involve a factual setting of a workmen's compensation proceeding in which a third party is attacking the validity of the marriage. The rule set forth in *Mauldin v. Sunshine Mining, supra*, is

"that the law presumes morality and not immorality, marriage and not concubinage; ... every intendment of the law leans to matrimony. When a marriage has been shown in evidence, whether reg-

ular or irregular, and whatever form of proof, the law raises a strong presumption of its legality, casting the burden of proof upon the party objecting and requiring him in every particular to make plain, against the constant pressure of this presumption the truth of law and fact that the marriage is illegal and void." (Citation omitted.)

This rule assumes of course that a marriage has been shown in evidence and that a non-party to the marriage is attacking its validity. Here the situation involved is simply a case where two parties to a relationship are not contesting the validity of the marriage but only the date of its inception.

The properties involved in this appeal include, (1) the Highland property in Salt Lake City, Utah;[1] (2) the Third East property in Rupert,[2] Idaho; (3) the Park Street property in Utah;[3] (4) a fifth wheel trailer; (5) a golf cart; (6) a motorcycle; (7) the source of funds in various bank accounts; and (8) the note owed by Raco Car Wash.[4] Respondent acquired prior to both marriages a farm in Minidoka County, a one half interest in a warehouse in California, farm equipment, and balance due on the sale of a dairy. Farm expenses including tax payments were made and income was earned from the farm and the sale of cattle, rental income from the warehouse, and interest income from the dairy sale. The golf cart, acquired in 1977, and a motorcycle in 1974, were acquired from funds in respondent's checking account.

The trial court determined that there was no community property and confirmed ownership of each party's separate property. Appellant owned all the stock in Water Park Corporation, which corporation owned a one half interest in the Highland property and a one half interest in the Third East property in Rupert. The court also confirmed appellant's sole and separate ownership of her station wagon and other miscellaneous household items. The court confirmed as respondent's sole and separate property a one half interest in the Salt Lake City Highland property, one half interest in the Rupert Third East property, his bank accounts, the golf cart, fifth wheel trailer, motorcycle, and the property acquired by him prior to marriage. The court also ordered appellant to reimburse respondent for community contributions paid on her separate property in Utah, which was later sold, and for one half of the taxes paid on the Highland property.

We turn now to appellant's challenge to the court's disposition of the property.

1. Initially Raco Car Wash Systems, Inc. leased this property from Mr. and Mrs. Blodgett under a 20 year lease. In order to obtain financing, Raco entered into a trust agreement on the lease. The Blodgetts, owners of the fee, subordinated their interest in order to raise the money to complete the car wash.

Raco became defunct and the trust deed was foreclosed. The property was sold at sheriff's sale on September 20, 1973, and was purchased by respondent. Respondent also paid off the balance on a security instrument on equipment. A portion of the property was sold to the Utah Department of Highway and Transportation and one half of the remaining property was deeded to appellant as a gift from respondent. Appellant then deeded her interest to Water Park Corporation.

Water Park Corporation is a Utah corporation in which appellant is the sole stockholder. It has never been disputed that she owns all the stock as her sole and separate property.

2. Respondent acquired this property by deed dated March 14, 1974. He sold a one half interest in this property to Water Park Corporation.

3. This property was purchased during the parties' first marriage by Raco Car Wash and was transferred to Water Park Corporation. It was later sold. Some of the proceeds of the sale were paid to respondent for the one half interest in the Rupert Third East property.

4. Raco Car Wash Systems Inc. was a corporation that did business in Salt Lake City, Utah, having a 20 year lease on the Highland property. It was having financial problems and appellant Betty Martsch arranged to borrow $20,-000 from Joe Martsch. This loan was made during the first marriage of the parties. A promissory note was executed by Raco in that amount. Prior to the first divorce decree being entered, respondent executed an "assignment and hold harmless agreement" conveying a 50% interest in the note to Betty Bishop Pursell Martsch.

■ The Highland property was acquired by respondent in September 1973, which was subsequent to the first divorce and prior to the second marriage. Thus it is his sole and separate property. I.C. § 32–903. (See footnote 1 for the circumstances surrounding his acquisition of the property.) In the latter part of 1973, after the first divorce, respondent made a gift to appellant of an undivided one-half interest in the Highland property. This one-half interest became wife's sole and separate property (I.C. § 32–906), which interest she later conveyed to Water Park Corporation.

■ In the sale to the State of Utah Department of Transportation, respondent retained the rights to salvage the car wash equipment. This equipment was sold and husband received $7,000 from that sale. Appellant contends that these proceeds were to give respondent recovery on the Raco Car Wash note. The trial court found that respondent has received no recovery on his loan to Raco Car Wash and respondent and appellant each have an undivided one-half interest and right to recovery from said corporation. We find no error.

The Third East property in Rupert was acquired in March 1974, after the time the court found the second marriage commenced, with payment being made from respondent's checking account in April 1974, which amount was at that time his sole and separate property. Respondent then conveyed one half to Water Park Corporation for $5,250, which money came from the sale of the Park Street property in Salt Lake City, appellant's separate property. The court confirmed in each party a one half interest in the Third East property as his or her sole and separate property.

The fifth wheel trailer was acquired by respondent on February 4, 1974. This asset was acquired prior to marriage and is therefore his sole and separate property. I.C. § 32–903.

Appellant contends that at the time of divorce the funds in respondent's bank accounts and the assets acquired from those funds were community property. As the basis for her contention she asserts that those funds included profits from husband's separate property and therefore, community, and that community and separate funds were commingled and thus all these funds became community property.

■ When separate and community property are commingled so that tracing is impossible, it is presumed to be community property, and the burden is on the person asserting the separate character of the property. When direct tracing is impossible, the party may employ indirect evidence in the form of an accounting. *Speer v. Quinlan*, 96 Idaho 119, 525 P.2d 314 (1974). The trial court used the *Houska v. Houska*, 95 Idaho 568, 512 P.2d 1317 (1973), and the *Evans v. Evans*, 92 Idaho 911, 453 P.2d 560 (1969), method of accounting and determined that the bank accounts were respondent's separate property.

■ Respondent's tax returns indicate that his separate property, the farm and warehouse, generated losses for the years 1974, 1976, and showed a gain in 1975. By averaging the three years together, respondent sustained an average loss of $3,000 per year. Since there was no net gain over that period, no community property came into existence from the income of his separate property, *i.e.*, the farm and warehouse.

As this court stated in *Malone v. Malone*, 64 Idaho 252, 130 P.2d 674 (1942),

"Sec. 32–907 of the code, heretofore quoted, providing that property acquired after marriage by either husband or wife, including the rents and profits of their separate property, is community property, refers to net rents and profits, and is not to be construed to mean that the gross income from separate property belongs to the community. To hold otherwise would cause the community, in time, to entirely consume the separate estates of the members thereof and would nullify Sec. 31–903 and Sec. 31–906 of the code."

There being no net income, there was no community property. The trial court averaged the three years, although there was a profit in 1975. Based on the reasoning in *Malone* this was proper.

■ Appellant contends that the rental income from the Highland property, division of which was previously determined, which was not included in the trial court's determination of income should have been added to create an accurate financial picture. However, both parties testified that this income was consumed by community expenses. Thus it cannot be considered as generating community income.

■ The trial court traced the assets in each of the bank accounts to the separate property of respondent, acquired before marriage. Since there was no community income from the separate property, there was no commingling of the funds and the property remains husband's separate property. The assets purchased with these funds, the golf cart and motorcycle, are also his separate property.

Having examined the records, files and testimony, we find no error in the trial court's determination as to the nature of the property and its confirmation as to the respective parties.

■ Appellant contends that she is entitled to reimbursement for funds expended on respondent's separate property from the bank accounts. However, since there was no community property, no community property could have been used to contribute to respondent's separate property and consequently there is no right to reimbursement.

■ During the marriage, from February 1974 to August 1974, appellant made payments of $200 on the Park Street property, her separate property, from her salary from Water Park Corporation. All salaries are community property, unlike rents and profits where only net proceeds are community property. The rules governing the expenditure of community funds on separate property are that the natural increase in the value of a spouse's separate property during the marriage is generally not community property. *Hiatt v. Hiatt*, 94 Idaho 367, 487 P.2d 1121 (1971). However, when community efforts, labor, industry, or funds enhance the value of separate property, such enhancement is community property for which the community is entitled to reimbursement. The measure of reimbursement for community expenditures on separate property is the increase in value of the property attributable thereto, not the amount or value of the community contribution. *Hooker v. Hooker*, 95 Idaho 518, 511 P.2d 800 (1972); *Suter v. Suter*, 97 Idaho 461, 546 P.2d 1169 (1976); *Tilton v. Tilton*, 85 Idaho 245, 378 P.2d 191 (1963).

■ The trial court originally found the net gain on the Park Street property was $8,600 and that the total payments made on the property were $5,900, of which sum $1,400 came from community funds. Thus, the community was entitled to $\frac{14}{59}$ths of the enhancement, or $2,040.68. However, in its memorandum decision on motion to amend the findings of fact and conclusions of law, the trial court amended its finding to state that the enhancement was $1,400, of which respondent was awarded $700 to be paid by appellant. The determination of value is within the discretion of the trial court and will not be disturbed on appeal if it is supported by substantial, competent evidence. *Tilton v. Tilton, supra*, and *Hooker v. Hooker, supra*.

■ Respondent also paid the 1973, 1974 and 1975 taxes on the Highland property in Salt Lake City, totalling $3,432.32. Since respondent only owns half the property he is entitled to reimbursement or credit for one half of the amount he paid.

■ Appellant contends that the trial court erred in requiring respondent to only pay all community debts up until December 16, 1976, the date of separation instead of until the date the decree is rendered. This court, in *Suter v. Suter, supra*, stated that a marriage continues despite a separation until a decree of divorce. Consequently, in that case the court held that both the earnings of husband and wife after separation are considered community property. Appellant, in this case however offered no evidence regarding the earnings of the parties after separation to be characterized as community property. Other than her sala-

ry, the trial court found that there was no community property. Therefore, there was no community property with which to discharge community debts. In her statement of facts, appellant states that the bills which existed at the time of trial were three years' taxes on the Highland property, three years' taxes on the Third East home, Salt Lake attorney fees for defense of the Highland property title and Mrs. Martsch's income taxes. As previously pointed out, each party owned one half interest in the Highland property, and the Third East property, as his or her sole and separate property. As such, each is liable for one half of the debts incurred by those properties. Those debts are not community debts, but obligations on each person's separate property.

 Appellant contends that respondent should be required to pay her attorney fees, including those incurred through appeal. The trial court originally awarded her reasonable attorney fees, but upon respondent's motion to amend, disallowed them. This decision was based on a determination that appellant had sufficient assets to pay her own fees. Whether to allow attorney fees is within the discretion of the trial court, pursuant to I.C. § 32–704, which states,

> "While an action for divorce is pending the court may, in its discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action."

This court has recognized that a wife has the right to have her interest presented and protected. *Tolman v. Tolman,* 93 Idaho 374, 461 P.2d 433 (1960). Although language in that case stated that a husband must, if possible, help bear the expense of divorce, this court in *Parker v. Parker,* 97 Idaho 209, 541 P.2d 1177 (1975), stated that the statute authorizes attorney fees to defend the action, it does not necessarily mean that the wife is entitled to them. The court then held that the award to the wife of attorney fees was an abuse of discretion since the wife had control of her share of community property which was worth nearly $100,000 and the award could not be characterized as necessary to enable her to prosecute or defend the action. Appellant has assets valued at approximately $68,000. The trial court determined that she had sufficient assets to pay her attorney fees. That determination cannot be characterized as an abuse of discretion and we find no error.

Judgment affirmed. Costs to respondent. No attorney fees allowed on appeal.

BAKES, C. J., DONALDSON and SHEPARD, JJ., and McQUADE, J., Pro Tem., concur.