858 P.2d 766

**Donald K. WEILMUNSTER, Plaintiff–Appellant–Cross Respondent,**

v.

**Lana Hale WEILMUNSTER, Defendant–Respondent–Cross Appellant.**

**No. 19145.**

Court of Appeals of Idaho.

Jan. 4, 1993.

Rehearing Denied Jan. 4, 1993.

Petition for Review Denied Sept. 28, 1993.

---

**2.** Our holding is limited to the pretrial detainee    situation.

Givens, Pursley, Webb & Huntley, Boise, for plaintiff-appellant-cross respondent. Robert Huntley, Jr., argued, Boise.

Bruce L. Thomas, Boise, for defendant-respondent-cross appellant.

## SUBSTITUTE OPINION

The Court's prior opinion, dated July 30, 1992, is hereby withdrawn.

SILAK, Judge.

This appeal concerns the classification and distribution of the parties' property upon divorce. Donald and Lana Weilmunster sued each other for a divorce and a decree classifying and distributing their separate and community assets. During the marriage, Donald commingled his separate funds with the funds of the community. At trial, Donald sought to prove by indirect tracing, or accounting, that many of the assets purchased with the commingled funds were proceeds of his separate funds, and, thus, his separate property. After trial, the magistrate awarded Lana a divorce against Donald. In classifying the parties' property, the magistrate determined that Donald had satisfactorily traced many of the commingled assets to his separate property, and, therefore, the magistrate attributed those assets to Donald's separate estate. The magistrate also concluded that the community's expenses during the marriage exceeded its income, leaving no community interest in the commingled funds. Lana appealed to the district court, claiming that the magistrate had wrongfully characterized much of the parties' property as Donald's separate property rather than as part of the community estate, which characterization not only led the magistrate to improperly award much of the community's property to Donald, but also to the erroneous conclusion that the community had no interest in the account's residual funds.

The district court substantially reversed the magistrate, holding that the magistrate erred in permitting Donald to prove his separate property by the use of accounting evidence when direct tracing of the parties' property was objectively possible, and in classifying much of the property as Donald's separate property rather than as community property. Donald now appeals to this court, and Lana cross-appeals. For the reasons set forth below, we reverse the district court in part and reinstate the findings and conclusions of the magistrate.

## FACTS AND PROCEDURAL BACKGROUND

Prior to and at the time of their marriage, both Lana and Donald had substan-

tial separate estates. Donald's premarital estate included four ranches; some mining claims; equipment used to run his various ranching, farming, and logging operations; a cattle herd of about 500 head plus calves; contracts receivable from the sale of real properties; and a bank account containing $25,000. The debts pertaining to Donald's premarital estate included contracts payable on real estate purchased for Donald's farming and ranching operations; various other loan obligations; and $60,000 in personal debt to a Mr. Blackeby. Lana's premarital estate included a number of rental properties, a one-sixth interest in a farm in Arizona, and a contract receivable on some real estate. The total debt Lana owed on these properties was approximately $130,-000. At the time of the marriage, Lana had no money in any accounts.

On June 12, 1981, Lana and Donald entered into an antenuptial agreement which, among other things, defined the parties' separate and community property. The design and intent of the antenuptial agreement was to protect and preserve the separate estates of the parties during the marriage. On June 16, 1981, Lana and Donald were married. During the marriage, Donald commingled proceeds and income from his separate property in the same accounts which contained the parties' community assets.

Throughout the marriage, Donald received interest income from his contracts receivable in the amount of $182,329. Donald used this separate income to pay interest charges on his various separate debts.

As mentioned above, Donald owned a cattle herd prior to the marriage. Both parties have characterized the calves which were born into the herd during the marriage as community property. During the marriage the parties did not distinguish between those cattle which were Donald's separate cattle, and those cattle which, being born into the herd during the marriage, were the community's. All of the cattle, both separate and community, were pastured on Donald's separate ranches throughout the marriage.

Also during the marriage, an interest in a W & W Land Partnership was purchased with funds from the commingled account.

On September 6, 1985, after approximately four years of marriage, Donald filed a complaint seeking a divorce against Lana on grounds of irreconcilable differences. Lana subsequently filed a counterclaim seeking a divorce against Donald on the same grounds and on the additional ground of extreme cruelty by infliction of grievous mental suffering.

The matter was tried to a magistrate over eight days of proceedings which concluded on June 19, 1987. The magistrate received extensive evidence regarding the alleged grounds for divorce and the proper classification and distribution of the parties' property. On June 26, 1987, the magistrate entered a partial summary judgment pursuant to a stipulation of the parties, which granted the parties a divorce and restored Lana to the use of her former name, Lana D. Hale. The magistrate reserved his determination as to the classification and distribution of the parties' property until further documentation and information had been submitted by the parties.

On September 30, 1987, after the parties had submitted post-trial motions, documentation and arguments, the magistrate filed his findings of fact and conclusions of law. The magistrate concluded that during the marriage both parties sustained net operating losses with respect to their separate estates; the community spent more money than it earned; proceeds from Donald's separate property and loans made up the community shortfall; the community estate did nothing to enhance the separate estate of either party; and the community had insufficient funds in the commingled account to have been able to purchase the interest in the W & W Land Partnership. Based on these findings, the magistrate concluded that the community had no interest in the funds which remained in the commingled account, and ordered an equitable distribution of the parties' remaining assets. Subsequently, Lana moved to amend and add to the magistrate's findings and conclusions. On April 21, 1988, the

magistrate filed amended and additional findings and conclusions, pursuant to which an Amended Judgment and Decree was entered on May 31, 1988.

On appeal to the district court, Lana contended that the magistrate erred in characterizing a number of the parties' assets as Donald's separate property, rather than attributing the assets to the community estate. She asserted that had the magistrate properly characterized these assets as community property, the magistrate would have found that the community's deposits in the account actually exceeded its expenditures. Specifically, Lana claimed that the magistrate should have credited the community estate with: (1) the interest income Donald received from his separate property during the marriage; (2) the pasturage value of Donald's separate ranches; and (3) more than 20% of the remaining cattle herd. She also claimed that had the magistrate correctly characterized these assets as community property, the magistrate would have found that the community had sufficient funds in the commingled account to purchase the disputed interest in the W & W Land Partnership.

In its memorandum decision on appeal, the district court substantially reversed the magistrate, holding: (1) that Donald should not have been allowed to use indirect tracing evidence to prove his separate property which he had commingled with community funds; (2) that the community was entitled to be credited with the amount of Donald's separate interest income which he used to pay the interest on his separate debts; (3) that the community should not have been charged with the cost of using Donald's separate property pastures to maintain the community's cattle during the marriage; and (4) that, on remand, the magistrate should reclassify the parties' assets pursuant to its holding, and reevaluate whether the community had sufficient funds in the commingled account to have been able to purchase the interest in the W & W Land Partnership. The district court affirmed the magistrate's finding that the community had a 20% interest in the remaining cattle herd. Donald has appealed, and Lana has cross-appealed, from the district court's decision.

## ISSUES ON APPEAL

Donald raises the following issues on appeal:

1. Whether the magistrate correctly exercised his discretion in admitting and applying the accounting, or indirect tracing, evidence presented by Donald to prove his separate property from the parties' commingled assets.

2. Whether the magistrate correctly determined that, under the terms of the antenuptial agreement, the community was not entitled to be credited with the amount of Donald's interest income which he used to pay the interest on his separate debts during the marriage.

3. Whether the magistrate correctly concluded that the community should be charged with the cost of using Donald's separate property pastures to maintain the community's portion of the cattle herd.

4. Whether the magistrate correctly decided that the community lacked sufficient funds to have been able to invest in the W & W Land Partnership, and therefore that the investment was Donald's separate property.

In her cross-appeal, Lana raises the issue whether the magistrate erred in finding that 80% of the cattle in the herd at the time of divorce were Donald's separate property, having been owned by him prior to the marriage.

## STANDARD OF REVIEW

■ The district court is considered an intermediate appellate court when it hears an appeal from a judgment in the magistrate division. Therefore, we are required to independently review the magistrate division's record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact, and to determine whether the magistrate correctly applied the law to the facts found. *Josephson v. Josephson*, 115 Idaho 1142,

1144, 772 P.2d 1236, 1238 (Ct.App.1989); *Gardner v. Gardner,* 107 Idaho 660, 662, 691 P.2d 1275, 1277 (Ct.App.1984).

> [T]he trial court, not this court on appeal, resolves the conflicting evidence and determines the weight, credibility and inferences to be drawn from such evidence; furthermore, where there is substantial and competent, although conflicting evidence of such acts and conduct, the findings of the trial court will not be disturbed.

*Gapsch v. Gapsch,* 76 Idaho 44, 48–49, 277 P.2d 278, 280 (1954) (citation omitted); *see also Evans v. Evans,* 92 Idaho 911, 917, 453 P.2d 560, 566 (1969).

### ANALYSIS

1. *Admission and Application of Accounting Evidence to Prove Donald's Separate Estate.*

A. Admission of Accounting Evidence.

■ During the course of the parties' marriage, Donald commingled his separate funds with the parties' community funds in a bank account. The funds from this account were used to pay for Donald's separate operations as well as the community's operations and expenses. At trial, Donald sought to prove which funds in the commingled account, and proceeds from funds in the commingled account, were his separate property. To accomplish this he offered accounting, or indirect tracing, evidence in the form of bank statements, deposit slips, checks, tax returns, and the testimony and reports of his accountant who summarized the parties' financial transactions during the marriage. Lana contends that the magistrate erred in allowing Donald to present this accounting evidence without first showing that it was impossible to use direct tracing to prove the separate character of the disputed assets.

Whether a party must show that direct tracing is impossible before the party is allowed to use accounting evidence to prove the separate character of assets is a question of law, which we review freely. For the following reasons, we hold that a party attempting to prove the separate character of assets derived from commingled funds is not required to demonstrate that direct tracing is impossible before employing accounting evidence to prove that the assets were purchased with separate funds.

Our Supreme Court has established legal principles governing the classification of property upon the dissolution of marriage where the parties have commingled their separate and community estates. In *Stahl v. Stahl,* 91 Idaho 794, 430 P.2d 685 (1967), the parties disputed the character of the husband's separate funds which he had commingled in an account with the parties' community funds. In resolving the dispute, the Supreme Court stated:

> [T]here is a presumption that all property acquired by the spouses during coverture is community property; however, when the source of the property can be established with reasonable certainty and particularity as the separate property of one or the other, the effect of such presumption is overcome, and the property so traced retains its character as separate property.
>
> . . . .
>
> So long as the separate property of either spouse is identifiable and traceable, commingling of such separate property with community property does not convert the separate property into community property.

*Stahl,* 91 Idaho at 797–98, 430 P.2d at 688–89 (citations omitted). It is significant that while the Court held that separate property which is commingled with community property retains its separate character so long as it can be traced "with reasonable certainty and particularity" to its separate source, the Court did not make any distinction between the direct and indirect tracing methods.

In *Evans,* the trial court found that the husband's separate estate had not been commingled with the community's assets to such an extent that it had lost its separate identity. On appeal, the Court stated:

It is true that there is a presumption that property acquired during marriage is community but only when it is impossible to trace the source of the specific property. Further, so long as the separate property of either spouse is identifiable and traceable, commingling of such property with community property does not convert the separate property into community property.

*Evans*, 92 Idaho at 918, 453 P.2d at 567. The Court then recited the same language quoted above from *Stahl*, and, after reviewing the accounting evidence presented by the husband, upheld the trial court's findings. Thus, in *Evans*, the Court upheld the husband's use of accounting evidence without requiring any showing that direct tracing was impossible.

In addressing this issue in *Houska v. Houska*, 95 Idaho 568, 512 P.2d 1317 (1973), the Court stated:

> The commingling doctrine is a special application of the general presumption that all property acquired during marriage is community property. The presumption places the burden of persuasion on the party asserting that certain assets are separate property. That party must prove that the property is separate with "reasonable certainty and particularity." This may be done by accounting evidence as well as by direct tracing.

*Houska*, 95 Idaho at 570, 512 P.2d at 1319. After stating that the separate nature of commingled property could be proved with accounting evidence as well as by direct tracing, the Court went on to note, "Mr. Houska *chose* to rely upon the accounting method employed in the recent Idaho case of *Evans v. Evans*." *Houska*, 95 Idaho at 570, 512 P.2d at 1319 (emphasis added). In *Houska*, the Court approved the husband's choice of using accounting evidence to prove the separate character of his commingled assets without requiring any showing that it was impossible to do a direct tracing of the assets to their sources.

The language relied upon by Lana, in arguing that a party must show the impossibility of direct tracing before using accounting evidence, originated in the case of *Speer v. Quinlan*, 96 Idaho 119, 525 P.2d 314 (1973). In *Speer* the husband commingled some of his separate funds in an account containing community income, and, at the time of divorce, attempted to prove that assets purchased from the account were his separate property. The trial court concluded that direct tracing was impossible, and, applying the presumption that all property acquired by the spouses during the marriage is community property, determined that the disputed assets were community property. The district court apparently did not consider accounting evidence in determining whether the husband had shown that the property was separate. In response to the district court's failure to consider accounting evidence, the Supreme Court stated, "When direct tracing of which funds purchased which assets is impossible, this Court has allowed the party asserting the separate character of assets to employ indirect evidence in the form of accounting." *Speer*, 96 Idaho at 131, 525 P.2d at 326. Lana asserts that this language imposes a threshold burden of proving that direct tracing is impossible before a party may prove the separate character of commingled assets by indirect tracing, or accounting. In light of the Court's prior cases, we do not believe the Court in *Speer* intended this language to have such an effect, but was merely pointing out the fact that even though direct tracing of an asset to a separate source is impossible, a party may still prove the separate character of the asset "with reasonable certainty and particularity" by the use of accounting evidence.

We recognize that in the subsequent opinion of *Martsch v. Martsch*, 103 Idaho 142, 645 P.2d 882 (1982), the Supreme Court recited the subject language from *Speer*, stating that "[w]hen direct tracing is impossible, the party may employ indirect evidence in the form of an accounting." *Martsch*, 103 Idaho at 146, 645 P.2d at 886. However, we again reject the argument that the Supreme Court, in using this language, intended to create a threshold burden of proving that direct tracing is impossible before a party is permitted to

present indirect tracing or accounting evidence. Immediately following the Court's use of this language in *Martsch*, the Court approved the trial court's use of the accounting method to determine that the commingled funds were the husband's separate property, without requiring any showing that the husband was unable to directly trace the funds. *Martsch*, 103 Idaho at 146, 645 P.2d at 886.

We also note that this Court, in dealing with the characterization of commingled funds in *Josephson*, did not require a threshold showing of impossibility before allowing the use of indirect tracing to prove the separate nature of the disputed assets. In setting forth the governing principles, this Court stated:

> The party who asserts that the property is separate has the burden of persuasion, and must prove the property is separate with reasonable certainty and particularity. This may be accomplished through evidence of tracing or accounting.

*Josephson*, 115 Idaho at 1145, 772 P.2d at 1239.

Our refusal to impose a requirement that parties show the impossibility of direct tracing before they can use accounting evidence is supported by sound policy considerations. The lack of such a prerequisite does not improperly encourage parties to employ accounting evidence when direct tracing is possible and feasible. This is because even though accounting evidence is admitted, the party asserting the separate character of the property still carries the burden of proving that fact with certainty and particularity, and it remains for the finder of fact to determine whether that burden has been met. Thus, parties asserting the separate character of commingled property will naturally be motivated to use direct tracing over indirect tracing evidence because direct tracing is generally more persuasive, if not conclusive, in proving the separate character of commingled property.

Based on our analysis of the above cases, we hold that a party asserting the separate character of property must prove the property is separate with reasonable certainty and particularity. The party may accomplish this by use of accounting evidence as well as direct tracing. *Houska*, 95 Idaho at 570, 512 P.2d at 1319. A showing that direct tracing is impossible is not required before accounting evidence can be used. Accordingly, we hold that the magistrate did not err in admitting and considering Donald's accounting evidence without first requiring him to show the objective impossibility of directly tracing the disputed assets.

### B. Classification of Property and Application of Accounting Evidence.

The magistrate determined that the great weight of the evidence supported Donald's theory of the financial history of the marriage; that during the marriage the community spent more money than it received; and that proceeds from Donald's separate property and loans made up for the community's deficit. Based on these findings, the magistrate concluded that the community's interest in the commingled assets had been entirely consumed during the marriage, and thus no community interest remained in the commingled assets at the time of divorce.

Lana contends that the magistrate erred in characterizing some of the parties' commingled assets in that some of the assets which the magistrate credited to Donald's separate estate should have been credited to the community. Specifically, she asserts that the magistrate erred in refusing to credit the community with the amount of interest income Donald received from his separate contracts receivable, and in refusing to credit the community with the pasturage value of Donald's separate pastures. Lana asserts that had the magistrate attributed these assets to the community estate, the magistrate would have found that the community's assets exceeded its expenditures during the marriage, and the magistrate would not have reached the erroneous conclusion that the W & W Land Partnership was Donald's separate property, the community having lacked sufficient funds to purchase the asset. We

will address each of these contentions in turn.

■ (i) *Classification of Income from Donald's Separate Property.* During the marriage Donald received $182,329 in interest from his contracts receivable, which income he used to pay the interest charges on his separate debts. Lana claims that, under I.C. § 32–906,[1] this separate income was community property, and that Donald should have been required to reimburse the community for these funds. For the following reasons, we hold that Donald's separate estate was not required to reimburse the community for these funds.

Where parties enter into a valid antenuptial agreement, their property rights are determined by that agreement and not by the Idaho Code provisions dealing with community property rights. I.C. § 32–916; *Wolford v. Wolford,* 117 Idaho 61, 65, 785 P.2d 625, 629 (1990). In this case, Donald and Lana entered into an antenuptial agreement, which provided as follows:

> To the extent possible, the husband's income from his separate property shall be used to discharge any obligations on his separate property, and the wife's income from her separate property shall be used to discharge any obligations on her separate property.
>
> Any of the income from the separate property of the husband used by him to pay and discharge any debt against any of his separate property shall be a loan from the community to the husband's separate property, and husband agrees that the community shall be reimbursed in this amount. Any increase in the value of the separate property attributable to the reduction of the debt against it by the loan from the community shall be separate property.

According to these provisions, Donald was required to reimburse the community only for the amount of his separate income which he used to "pay and discharge" his separate debts. This raises the question whether payment of the *interest* on Donald's separate debts "paid and discharged" those debts under the antenuptial agreement.

Whether terms of a contract are ambiguous is a question of law to be determined by the court, however, once ambiguity is determined, resolution of the ambiguity is a question of fact. *Newman v. Associated Systems, Inc.,* 107 Idaho 922, 924, 693 P.2d 1124, 1126 (Ct.App.1985). The respective arguments of the parties in this case demonstrate that the disputed terms of the antenuptial agreement are reasonably subject to conflicting interpretations. Accordingly, we conclude as a matter of law that the antenuptial agreement is ambiguous as to whether the payment of interest on separate debts constitutes payment and discharge of the debt. Because the antenuptial agreement is ambiguous, the determination of what the parties to the contract actually agreed to with respect to this issue was a question of fact for the finder of fact to determine. *Woodvine v. Triangle Dairy, Inc.,* 106 Idaho 716, 722, 682 P.2d 1263, 1269 (1984).

■ The primary consideration in interpreting ambiguous terms of a contract is a determination of the intentions of the parties, which are to be gleaned from all the evidence. *Luzar v. Western Sur. Co.,* 107 Idaho 693, 697, 692 P.2d 337, 341 (1984). In determining the parties' intent under an ambiguous contract, the trier of fact may consider the objective and purpose of the agreement, as well as the conduct of the parties to the agreement. *Bischoff v. Quong–Watkins Properties,* 113 Idaho 826, 829, 748 P.2d 410, 413 (Ct.App. 1987). The fact finder must also construe the contract as a whole, rather than focusing on isolated provisions, *Moss v. Mid-American Fire and Marine Ins. Co.,* 103 Idaho 298, 302, 647 P.2d 754, 758 (1982), so as to give effect to every part of the contract, if possible. *Ace Realty, Inc. v. Anderson,* 106 Idaho 742, 749, 682 P.2d 1289, 1296 (Ct.App.1984). We will not disturb the trial court's resolution of the ambiguity where the trial court's determination

---

1. I.C. § 32–906 provides that during marriage, unless certain exceptions apply, "the income of all property, separate or community, is community property...."

is supported by substantial competent evidence.

After trial in this case, the magistrate made the following findings with respect to the meaning of the antenuptial agreement:

The community did nothing to enhance the separate estate of [Donald] nor the separate estate of [Lana]. Community funds, if any, used to pay interest on debts of either [Donald's] separate estate or [Lana's] separate estate do not constitute "pay and discharge" debt under the terms of the antenuptial agreement. These sums, if any, did not increase the equity of either party in their separate estates.

These findings are supported by substantial competent evidence in the record. At trial, the experts for both parties testified that for accounting purposes, interest charges do not constitute a debt, and the payment of interest charges does not pay and discharge a debt; rather, interest is merely the cost of carrying a debt. One can pay the interest on a debt indefinitely without discharging any of the debt. While the evidence in the record is conflicting on this issue, we conclude that there is substantial competent evidence to support the magistrate's finding that Donald's payment of interest on his debts did not "pay and discharge" those debts under the terms of the antenuptial agreement, and therefore that Donald was not required to reimburse the community for the $182,329 of his separate income which he used to pay interest on his separate debts.

■ (ii) *Classification of Pasturage Value of Donald's Separate Land.* During the marriage, the land on Donald's separate ranches was used to pasture both Donald's separate cattle and the community's cattle. At trial, Donald claimed that his separate estate should be reimbursed for the cost of pasturing the community's cattle on his separate land during the marriage. Lana claims that the pasturage value of Donald's land was income from his separate property, which income belonged to the community under I.C. § 32–906, and therefore the community should not be required to reimburse Donald for the pasturage value of his land, since that value pertained to the community estate. For the following reasons, we disagree.

■ It is a well-settled principle of Idaho community property law that only "net income" from separate property becomes community property. While I.C. § 32–906 provides that during the marriage the income derived from all property, separate or community, is community property, our Supreme Court has held that the terms "rents" and "profits" as used in that code section refer to "net income" only, and are not to be construed to mean that the gross income from separate property belongs to the community. *Houska,* 95 Idaho at 570, 512 P.2d at 1319 (citing *Malone v. Malone,* 64 Idaho 252, 130 P.2d 674 (1942)). *See also Evans,* 92 Idaho at 919, 453 P.2d at 568 (rents and profits from a party's separate property are community property only to the extent that they are net rents and profits). Thus, the separate income from Donald's ranches, including the pasturage value of the land, became community property only to the extent that it was "net income" resulting from Donald's separate property.

After trial, the magistrate found that during the marriage there was no net income realized by the community estate or the separate estates of either Donald or Lana. Rather the magistrate found that during the marriage the separate estates of both Donald and Lana sustained net operating losses; that the community spent more money than it received; and that proceeds from the sale of Donald's separate property, and loans secured by Donald's separate assets, made up for the community's shortfall. The magistrate further found that Donald's ranching operations failed to achieve any net income during the marriage. The magistrate based these findings on the parties' tax returns and the testimony of Donald and another cattle and ranching expert. We conclude that there was substantial competent, although conflicting, evidence to support the magistrate's finding that Donald's separate ranching operations sustained net operating losses during the marriage. Accord-

ingly, we hold that the pasturage value of Donald's separate ranches did not constitute net income from his separate property, and therefore did not constitute community property, but was Donald's separate property.

In *Josephson* we stated that "[i]n the event separate property is used for community expenditure, reimbursement may be sought from the community, unless a gift to the community was intended." *Josephson*, 115 Idaho at 1145–46, 772 P.2d at 1239–40. In this case, there is no evidence that Donald intended to give to the community the cost of pasturing the community's cattle on his separate land. We therefore affirm the magistrate's conclusion that the community should reimburse Donald's separate estate for the cost of pasturing the community's cattle during the marriage.

■ Lana also claims that Donald failed to adequately prove the cost of pasturing the community's cattle on his land. Based on the evidence presented, the magistrate made the following finding regarding the amount the community should be required to reimburse Donald for pasturing its cattle:

The testimony of Tom Hovenden and Ernest Beckman established, without contradiction, that the reasonable pasturage value of [Donald's] separate property ... used to pasture cattle (the sales proceeds of which the community enjoyed) is in the amount of $9–$10 per animal per month. Mr. Hovenden further testified that the carrying costs of the land represented by the interest paid would be an appropriate charge for pasturage except for the years 1986 and 1987. An allocation of the real estate interest paid on separate debt secured by [Donald's] separate land is a fair apportionment for pasturage of the community cattle since the community enjoyed those cattle sales receipts.

Before the magistrate entered his findings and conclusions, Donald presented to the magistrate a schedule which showed what percentage of the cattle herd belonged to the community during the marriage. The magistrate also had before him evidence of the amount of interest paid by Donald to carry the land during the marriage. Based on the uncontradicted testimony of the experts mentioned above, and the information on this schedule, the magistrate could conclude that the carrying costs of Donald's separate land, represented by the interest paid, constituted a reasonable pasturage charge on the land. The magistrate could also determine, based on the proportionate number of community cattle on the land during the marriage, what proportion of the carrying costs of the land should be paid by the community. Accordingly, the magistrate had before him substantial competent, although conflicting, evidence to support his finding as to how much the community should reimburse Donald for pasturing the community's cattle, and that finding is affirmed.

■ (iii) *Application of Accounting Evidence and Classification of the Interest Purchased in the W & W Land Partnership.* The evidence in the record shows that all of the community's funds were maintained in an account into which Donald commingled his separate funds. Based on the tax returns of the parties, the magistrate found that the community spent more money than it received during the marriage. The magistrate also found that Donald, through documentary evidence and the testimony of his accountant, had met his burden of tracing and accounting for all funds received during the marriage. From the accounting evidence presented by Donald, the magistrate was able to identify those deposits and expenditures which pertained to the community and those which pertained to Donald's separate estate. This accounting evidence also supports the magistrate's finding that the community's expenditures exceeded its deposits. The record also supports the magistrate's finding that Donald's separate funds in the commingled account made up for the community's shortfall.

The record shows that the disputed interest in the W & W Land Partnership was purchased with funds from the commingled account. The magistrate concluded that because the community had exhausted its

share of the commingled account, the interest in the W & W Land Partnership must have been purchased with Donald's separate funds, and thus according to the accounting method of tracing, the asset pertained to Donald's separate estate. We note that the evidence in the record does not show that, at the time the interest in the W & W Land Partnership was purchased from the commingled funds, the community's share of those funds had been exhausted. However, our Supreme Court has stated that "a requirement of showing that community funds were exhausted at the date of purchase of each disputed asset, imposes too heavy a burden of record keeping on the average spouse." *Speer*, 96 Idaho at 131, 525 P.2d at 326. As noted above, the factual findings which underlie the magistrate's conclusions are supported by substantial competent, although conflicting, evidence. Accordingly, we can find no error in the manner in which the magistrate classified the separate and community property of the parties and the magistrate's findings and conclusions regarding the classification and distribution of the parties' commingled funds are affirmed.

2. *Classification of the Cattle Herd.*

■ The magistrate determined that 80% of the cattle at the time of divorce were Donald's separate property, having been owned by him prior to the marriage. The magistrate credited the remaining 20% of the cattle to the community estate. Lana contends that this finding is clearly erroneous because it is not supported by substantial evidence.

■ In a divorce proceeding, the trial court, not this Court on appeal, resolves the conflicting evidence and determines the weight, credibility, and inferences to be drawn from such evidence, and, where the evidence is substantial and competent, although conflicting, the trial court's findings will not be disturbed. *Gapsch*, 76 Idaho at 48–49, 277 P.2d at 280.

At trial, Donald testified that at the time of the divorce approximately 80% of the cattle in the herd were cattle that he had owned prior to the marriage. Donald also testified that during the marriage he sold the younger animals which had been born into the herd because he could not afford to sell and replace the older cattle. The testimony of a Mr. Beckman indicated that he purchased most of Donald's older cows in the spring of 1981, before the parties were married, leaving Donald with a relatively young herd at the beginning of the marriage. This testimony constitutes substantial competent evidence supporting the magistrate's finding that 80% of the cattle at the time of divorce were Donald's separate property, having been owned by him prior to the marriage. Because this finding is supported by substantial competent evidence, we will not disturb it on appeal.

## CONCLUSION

Based on the facts and reasoning set forth above, we hold that the magistrate did not err in: (1) admitting and considering the accounting evidence presented by Donald; (2) classifying the interest income from Donald's separate property; (3) classifying the pasturage value of Donald's separate property; (4) classifying the interest purchased in the W & W Land Partnership; and (5) determining the community's interest in the parties' cattle herd. Accordingly, we reverse the appellate decision of the district court with respect to issues (1), (2), (3) and (4), and affirm the district court's decision with respect to issue (5), thus affirming the judgment of the magistrate.

Costs to appellant, Donald Weilmunster. No attorney fees allowed on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.