913 P.2d 1178

Edward WORZALA, Plaintiff–Appellant,

v.

Bonnie Rene WORZALA, Defendant–Respondent.

No. 20661.

Supreme Court of Idaho,
Coeur d'Alene, October 1994 Term.

March 26, 1996.

Rehearing Denied March 26, 1996.

Stephen B. McCrea, Coeur d'Alene, for appellant.

Sims, Liesche, Newell, Kelso, Wallace & Wallace, P.A., Coeur d'Alene, for respondent. Ramona R. Leische argued.

McDEVITT, Chief Justice.

## I.

### BACKGROUND AND FACTS

Edward and Bonnie Worzala were married on June 10, 1977, in the State of Wisconsin. Six years earlier, Edward and John MacKenzie (Mackenzie) established a welding supply business that was eventually incorporated in Wisconsin under the name Welding Alloys, Inc. (Welding Alloys). Welding Alloys established a trademark for its line of welding supplies under the name Repair Alloy. In 1977 Edward and MacKenzie had a falling out, which resulted in a lawsuit. After the lawsuit, in which MacKenzie unsuccessfully alleged that Edward was misappropriating corporate assets, Edward and MacKenzie agreed that Edward or Welding Alloys would buy out MacKenzie's shares in the company. The record is not clear as to what assets were used to purchase MacKenzie's shares in Welding Alloys.

Shortly after Edward and Bonnie were married, Edward began winding Welding Alloys down and started a new corporation under the name Repair Alloy, Inc. (Repair Alloy). Edward and Edward's accountant testified that Repair Alloy was started with assets "appropriated" from Welding Alloys, and commissions Edward was earning at Welding Alloys. Repair Alloy was incorporated in Wisconsin in September 1977. The Wisconsin Department of Employment con-

sidered Repair Alloy to be the successor in interest to Welding Alloys. Welding Alloys continued to exist, although its operations appear to have been limited to collecting accounts receivable and using those funds to buy out MacKenzie's shares.

From the time of the marriage until they moved to Idaho in 1984, Edward and Bonnie lived in a house purchased by Edward prior to the marriage in Onomowoc, Wisconsin (the Onomowoc property). Edward and Bonnie moved to Idaho in early June 1984. In 1985, Edward sold the Onomowoc property for $150,000, using a portion of the proceeds to pay off the $51,000 balance remaining on the mortgage.

After moving to Idaho, Edward sold Repair Alloy to Gene Kasprasak (Kasprasak), one of Edward's employees at Welding Alloys and Repair Alloy. Under the contract for sale, Kasprasak paid $350,033 for the business. Kasprasak paid $34,158 down, and later paid a balance of $181,748 for the business' accounts receivable and good will. Kasprasak sold the inventory on consignment, and eventually paid Edward $124,387 for that inventory. Kasprasak and Edward agreed that Kasprasak would hold back $10,000 to cover potential bad debts in the accounts receivable. Of that amount, $9,700 was eventually paid to Edward. Although the amount paid is not clear from the record, Edward used a portion of the proceeds from the sale of the business to pay off a line of credit Valley Bank of Hartford had extended to Repair Alloy. The credit line was apparently used to buy a Ford Bronco that was registered in the corporation's name. Although Repair Alloy listed the Bronco as an asset, it was not included in sale of the business. Bonnie testified that the car was primarily used by her for family and personal matters.

Edward created an Idaho Corporation, Ex–Repair Alloy, Inc., a/k/a Ex–RA (Ex–RA), which was used to wind down the Repair Alloy sale. Repair Alloy and Ex–RA had the same I.R.S. employer identification number. The parties agree that $60,299 of the money paid for Repair Alloy was used to pay off the mortgage on the building where Repair Alloy was located (the Ellis Street property). This building, which Edward and

Bonnie purchased in 1980, was later sold for $120,000. Prior to this sale, and after Repair Alloy was sold, the Worzalas received $1,800 per month rental income from the property.

Another item of significant value and controversy in this appeal is 300 troy ounces of gold wire that was purchased by either the Worzalas or Repair Alloy during the marriage. The gold wire was later sold for $127,000. At trial Edward testified that he purchased the gold wire before the marriage. Bonnie testified that she and Edward discussed the purchase prior to making it, and that the wire was purchased by the Worzalas', not Repair Alloy. Bonnie further testified that, after they purchased the wire, Edward stored it in their house.

Edward filed a complaint seeking a decree of divorce on the grounds of irreconcilable differences on October 17, 1989. Bonnie answered the complaint and counterclaimed, seeking support for the couple's three minor children, as well as various items of personal and real property and half of the value of the investments made during marriage. The trial was bifurcated, and only issues involving the division of property and debts and child support were presented in this case. Following three days of testimony, the magistrate issued findings of fact and conclusions of law, disposing of the assets relevant to this appeal.

The magistrate found that Repair Alloy was essentially a "lock step" continuation of Welding Alloys, which was created through an appropriation of Welding Alloys' assets, and which distributed the same inventory to the same customers with the same employees. As a result, the magistrate concluded that the proceeds from the sale of Repair Alloy were Edward's separate property. The magistrate traced the assets from the sale of Repair Alloy to several securities presently held by Edward and Bonnie.

The magistrate also found that the Worzala's 1978, 1979, 1985 and 1986 income taxes were paid out of Edward's separate property. The court further concluded that the community was adequately compensated for its contribution during the operation of Repair Alloy, except to the extent of the payment of

community income taxes out of Edward's separate property, for which Edward would not be reimbursed by the community.

The magistrate found that the Onomowoc property, part of Edward's separate property, had been enhanced in value by $20,000 through community contributions. The Ellis street property was acquired as a community asset, although the magistrate concluded that Edward paid $60,000 of the purchase price out of his separate funds.

The magistrate also found that Edward was unable to establish that the gold wire was not acquired by the community with community funds. The proceeds from the sale of the gold were included in the community estate. The Ford Bronco was neither purchased by the community nor sold with the business, and the magistrate concluded that it was therefore a gift to the community.

On March 6, 1992, the magistrate issued an amended decree of divorce, which combined the findings of fact and conclusions of law entered in both parts of the bifurcated proceedings. Edward filed a notice of appeal from the magistrate division to the district court, alleging that the magistrate erred in determining that the gold wire was community property, in holding that Edward's separate estate should not be reimbursed for its payment of community debts, and in its division of other specific items of personal property. Bonnie cross-appealed.

The district court affirmed the magistrate in part, reversed the magistrate in part, and remanded the case for the magistrate to reconsider the determination that Repair Alloy was Edward's separate property. The district court concluded that "[t]he trial court's conclusion that 'the acquisition of Repair Alloy was plaintiff's sole and separate property' is not supported by its finding that 'the new corporation was created by appropriating the assets of Welding Alloys.'" C.R. 230. As a result of this holding, many of the other issues raised on appeal (whether the proceeds from the sale of Repair Alloy were properly characterized, whether Edward is entitled to reimbursement for separate tax contributions, and whether the Ford Bronco was properly characterized) were not resolved by the district court.

The district court affirmed the balance of the magistrate's holdings. Specifically, that court held that the magistrate's findings that the value of the Onomowoc house was enhanced by $20,000 through community contributions and that the gold wire was community property were not clearly erroneous. The district court held that the magistrate's valuation of certain items of personal property and the new corporation started by Edward, and the allocation of community debt were not erroneous, and that the order of child support was proper.

Edward appealed to this Court, claiming that the magistrate's finding that Repair Alloy was Edward's separate property is supported by substantial and competent evidence, the magistrate's finding that the gold wire was community property is clearly erroneous, and the magistrate erred in computing child support. Bonnie asserts that she is entitled to attorney fees on appeal.

## II.

### STANDARD OF REVIEW

This Court's review of a magistrate's decision is made independently from, but with due regard for, the decision of a district judge sitting in an appellate capacity. *Smith v. Smith*, 124 Idaho 431, 436, 860 P.2d 634, 639 (1993); *Ireland v. Ireland*, 123 Idaho 955, 957–58, 855 P.2d 40, 42–43 (1993). The magistrate's findings of fact will be upheld if they are supported by substantial and competent evidence. *Smith*, 124 Idaho at 436, 860 P.2d at 639.

## III.

### THE MAGISTRATE'S FINDING THAT REPAIR ALLOY WAS EDWARD'S SEPARATE PROPERTY IS NOT SUPPORTED BY SUBSTANTIAL AND COMPETENT EVIDENCE

The magistrate concluded that Repair Alloy was Edward's separate property because it was financed exclusively with Edward's separate property. The district court reversed, holding that the magistrate's finding, that Repair Alloy was started by appro-

priating assets from Welding Alloys, "is equivocal in that the meaning of the phrase 'by appropriating the assets of Welding Alloys' is unclear." C.R. 230 Edward appeals the district court's decision, contending that the record presents sufficient evidence to support the magistrate's conclusion that Repair Alloy was financed exclusively through Edward's separate property.

 Under Idaho law, all property acquired during the marriage is rebuttably presumed to be community property. *Smith*, 124 Idaho at 436, 860 P.2d at 639; *Shill v. Shill*, 115 Idaho 115, 118, 765 P.2d 140, 143 (1988). Edward, as the party asserting that the property is separate, bears the burden of proving to a reasonable certainty that the property is separate. *Smith*, 124 Idaho at 436, 860 P.2d at 639. If an asset purchased during the marriage is purchased with separate property, that asset becomes the separate property of the acquiring spouse. *Winn v. Winn*, 105 Idaho 811, 813, 673 P.2d 411, 413 (1983). However, as this Court noted in *Winn*, "before the principle may be applied, the asset actually given in exchange for the property purchased must be identified." *Id.* at 814, 673 P.2d at 414. The question presented by this appeal is whether substantial and competent evidence supports the magistrate's conclusion that Edward proved to a reasonable certainty that the assets used to start Repair Alloy were Edward's separate property.

The magistrate found that Repair Alloy was created through an "appropriation" of assets from Welding Alloys, and that MacKenzie's interest in Welding Alloys was purchased with Welding Alloys' accounts receivable and Edward's commissions. Although it is undisputed that Edward's ownership interest in Welding Alloys was Edward's separate property, the record does not present substantial evidence to support the magistrate's conclusion that MacKenzie's interest in Welding Alloys was purchased exclusively through Edward's separate property. In fact, Edward's testimony that MacKenzie's interest was purchased at least partially through Edward's commissions militates against this conclusion. Commissions Edward earned during the marriage would be a community asset, *see Martsch v. Martsch*, 103 Idaho 142, 147, 645 P.2d 882, 887 (1982) (all salaries are community property), and nothing in the record establishes when the commissions used to purchase MacKenzie's shares were earned by Edward.

The record does not present substantial and competent evidence that Edward has met his burden of establishing to a reasonable certainty that the assets actually used to purchase MacKenzie's interest in Welding Alloys were exclusively Edward's separate property. Absent such evidence, the extent of Edward's separate interest in the proceeds from the sale of Repair Alloy cannot be reasonably ascertained. As this Court noted in *Gapsch v. Gapsch*, 76 Idaho 44, 277 P.2d 278 (1955), "[w]here a business is begun with both community and separate funds it generally constitutes community and separate property in the proportion or ratio in which the contributions have been made by the two estates." *Id.* at 56, 277 P.2d at 285.

The magistrate's amended decree of divorce is therefore vacated in part and remanded for further findings as to the source of the assets used to purchase MacKenzie's interest in Welding Alloys.

The magistrate also concluded that Edward should not be compensated for the amount of his separate property used to pay community tax debts. Because this conclusion was based on the premise that the proceeds from the sale of Repair Alloy were Edward's separate property, this portion of the magistrate's decree is also vacated and remanded for further findings.

## IV.

## THE MAGISTRATE'S FINDING THAT THE GOLD WIRE AND THE FORD BRONCO WERE COMMUNITY PROPERTY IS SUPPORTED BY SUBSTANTIAL AND COMPETENT EVIDENCE

 There was conflicting testimony at trial as to when the gold wire was purchased. The magistrate found Bonnie more credible on this issue, and rejected Edward's contention that he personally purchased the wire

prior to the marriage. When reviewing factual determinations on appeal, this Court will defer to the magistrate's weighing of evidence and determination of witness credibility. *Rohr v. Rohr,* 118 Idaho 689, 691, 800 P.2d 85, 87 (1990) ("[D]eference must be given to the special opportunity of the trial court to assess and weigh the credibility of the witnesses who appear before it.").

The record contains no financial records of the wire's purchase. The magistrate's finding that Edward failed to trace the source of the funds used to purchase the wire is supported by substantial, although conflicting, evidence, and will not be disturbed on appeal.

■ Similarly, the record supports the magistrate's findings that, although purchased by Repair Alloy, the Bronco was used by the community and that the Bronco was neither purchased from Repair Alloy nor included in the sale of Repair Alloy. The magistrate's conclusion that the Bronco was gifted to the community is also affirmed.

## V.

### THE MAGISTRATE DID NOT ERR IN COMPUTING CHILD SUPPORT

■ Edward argues that the magistrate erred in computing the interest income from several investments awarded to the parties in the amended decree and, as a result, incorrectly computed the amount of child support Edward should pay under the Child Support Guidelines. However, Edward has failed to establish that the magistrate's findings were not supported by substantial and competent evidence. *Ireland v. Ireland,* 123 Idaho 955, 958, 855 P.2d 40, 44 (1993) (reviewing trial court's findings under Idaho Child Support Guidelines for substantial and competent evidence). In this case, Edward has failed to show that the findings upon which the magistrate based its calculation of Edward's child support obligation were not supported by substantial and competent evidence. The record supports the magistrate's estimation of the future probable earning levels of both Bonnie and Edward. The magistrate's findings are supported by substantial and competent evidence. The order of support is affirmed.

## VI.

### CONCLUSION

The amended decree of divorce is vacated in part, affirmed in part, and remanded for more particularized findings as to the source of funds used to purchase MacKenzie's shares of Welding Alloys. Costs on appeal to respondent. No attorney fees are awarded on appeal.

JOHNSON, TROUT and SILAK, JJ., and LEGGETT, Justice Pro Tem, concur.