# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 52669

| | |
|---|---|
| JAMES ALAN WILEY, | ) |
| | ) Filed: February 20, 2026 |
| Petitioner-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| DALE LYNN FURMAN, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Gerald F. Schroeder, District Judge. Hon. Michael McLennan, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate court, affirming property division in a judgment and decree of divorce, <u>affirmed</u>.

Brian M. DeFriez, Boise, for appellant. Brian M. DeFriez argued.

Gordon Delić & Associates PLLC; Damir Delić, Boise, for respondent. Damir Delić argued.

---

MELANSON, Judge Pro Tem

Dale Lynn Furman appeals from a decision of the district court, on intermediate appeal from the magistrate court, affirming the property division in a judgment and decree of divorce. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Furman and Jim Alan Wiley were married in February 2011. During the marriage, the parties maintained multiple financial accounts and, between 2021 and 2023, acquired four parcels of real property. Wiley filed for divorce in July 2023.

At trial, the primary dispute concerned whether certain financial accounts and parcels of real property were Furman's separate property or community property. Furman asserted that

1

substantial portions of the parties' financial accounts and the four disputed properties were her separate property. To support her claim, Furman presented expert testimony from her brother, a certified public accountant (CPA).

In performing his analysis, the CPA reviewed selected bank statements, credit card statements, and financial records. He categorized transactions as community or separate based on his review of the records and his understanding of the sources of funds. The CPA assumed that certain accounts were separate property accounts, despite the absence of documentation establishing the character of the accounts at the time of the parties' marriage. He also assumed that all community income and expenses flowed through a particular account, even though testimony indicated that some income and expenses were handled through other accounts.

The CPA did not analyze all sources of income earned during the marriage and did not include all expenses. Specifically, he excluded income not reflected on tax returns, including social security and veteran's disability benefits received by Wiley, proceeds from property sales, and income and expenses flowing through accounts not selected for review. The CPA also subjectively determined which transactions to include or exclude from his analysis based on his own classifications of separate property versus community property. With respect to the real properties, the CPA traced certain down payments to specific accounts but did not establish, through documentation, the separate character of those accounts at the time of the marriage. His analysis did not identify the balances of accounts at the time of the marriage or establish what funds, if any, were inherited or were otherwise separate property.

The CPA further testified that he employed both indirect tracing and direct tracing methodologies. For the indirect tracing analysis, he calculated community income using twelve years of tax returns and compared that income to approximately five years of community expenses. The CPA testified that he excluded mortgage payments, property improvement, asset acquisition and home purchase down payments and treated those expenditures as Furman's separate property. The CPA acknowledged that his analysis relied on tax returns and incomplete bank and credit card records and that he did not trace transfers between accounts. Both parties stipulated that neither party produced bank statements for any accounts from the date of the marriage until January 1, 2021.

2

The magistrate court found that the CPA's indirect tracing analysis was deficient because he relied primarily on tax returns and incomplete bank and credit card records, excluded categories of income and transactions not reflected in the tax returns, and did not adjust for transfers between accounts. The magistrate court further found that the absence of documentation establishing account balances at the time of the marriage, combined with extensive commingling of funds during the marriage, made it impossible to determine the existence or amount of any separate funds with reasonable certainty and particularity.

With respect to direct tracing, the magistrate court concluded that Furman failed to establish the separate character of any of the financial accounts or the disputed real properties with reasonable certainty and particularity. The magistrate court also found that down payments and mortgage payments for the disputed properties were made from accounts determined to be community property and that rental income generated during the marriage was community property. The magistrate court concluded that all community property and community debts were to be divided equally and entered a judgment and decree of divorce dissolving the marriage, including a property and debt allocation schedule.

Furman appealed to the district court. On intermediate appeal, Furman challenged the magistrate court's rejection of her indirect tracing and direct tracing analyses and asserted that the magistrate court committed mathematical errors. The district court found that the magistrate court conducted an extended and detailed analysis of the record and that Furman failed to demonstrate error. The district court agreed that Furman's analysis was inherently improbable due to unsupported assumptions, incomplete financial data, and subjective classifications of transactions. As a result, the district court ultimately affirmed the magistrate court's findings and conclusions. The district court further concluded that Furman's claims of mathematical error were not preserved for appeal because they were not raised before the magistrate court through a request to amend the findings. Finally, the district court awarded attorney fees and costs to Wiley on intermediate appeal, concluding that the appeal invited a reweighing of evidence and lacked a reasonable foundation. Furman again appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate court, we review the record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *Id.* Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefore, and either affirm or reverse the district court.

## III.

## ANALYSIS

Furman asserts four arguments on appeal. First, she challenges the magistrate court's rejection of her CPA's tracing analysis and the conclusion that she failed to establish the separate character of certain bank accounts and real property. Second, she alternatively asserts--for the first time on appeal--that she is entitled to reimbursement for down payments allegedly made with separate funds. Third, she contends that the district court erred by declining to address alleged mathematical errors in the magistrate court's judgment and divorce decree. Finally, she argues the district court abused its discretion by awarding Wiley attorney fees and costs on intermediate appeal.

### A.      Property Division

Furman argues that the magistrate court erred in rejecting her CPA's tracing analysis and concluding Furman failed to establish the separate character of bank accounts and real property. In support, she contends that commingling does not preclude indirect tracing, precise documentation is unnecessary, and the magistrate court improperly discounted her expert's analysis. Wiley responds that the magistrate court correctly rejected the analysis because Furman failed to establish the separate character of any accounts through adequate documentation and reliable tracing.

The disposition of property--including valuation and division--is reviewed for an abuse of discretion. *Stewart v. Stewart*, 143 Idaho 673, 677, 152 P.3d 544, 548 (2007). When a trial court's

4

discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). The trial court's determination will not be disturbed on appeal if it is supported by substantial and competent evidence. *Chandler v. Chandler*, 136 Idaho 246, 249, 32 P.3d 140, 143 (2001). Where there is conflicting evidence, the trial court determines the weight, credibility, and inferences to be drawn from the evidence. *Id*.

Idaho Code Section 32-903 states that all property owned by a spouse before marriage remains that spouse's separate property. That said, all other property acquired after marriage, including income on separate property, is community property. I.C. § 32-906. In Idaho, "income derived during a period of marriage from the efforts, labor[,] and industry of the parties constitutes community assets." *Hiatt v. Hiatt*, 94 Idaho 367, 368, 487 P.2d 1121, 1122 (1971). Because all property acquired during the marriage is presumed to be community property, a party asserting a separate property interest bears the burden of proving, with reasonable certainty and particularity, that the property is separate. *Barton v. Barton*, 132 Idaho 394, 396, 973 P.2d 746, 748 (1999).

Alternatively, separate property may be converted to community property through commingling. *Robirds v. Robirds*, 169 Idaho 596, 609, 499 P.3d 431, 444 (2021). Even so, commingling of separate and community property does not automatically convert the separate property to community property where the separate property can be identified through either direct tracing or accounting. *Id*.; *Papin v. Papin*, 166 Idaho 9, 25, 454 P.3d 1092, 1108 (2019). When separate and community property are commingled so that tracing is impossible, it is presumed to be community property, and the burden is on the person asserting the separate character of the property. *Robirds*, 169 Idaho at 609-10, 499 P.3d at 444-45. A party asserting a separate property interest bears the burden of proving that interest with reasonable certainty and particularity. *Houska v. Houska*, 95 Idaho 568, 570, 512 P.2d 1317, 1319 (1973). Where direct tracing is impossible, a party may use the indirect accounting method. *Martsch v. Martsch*, 103 Idaho 142, 146, 645 P.2d 882, 886 (1982). In divorce proceedings, the determination of the value of community property is within the discretion of the trial court and will not be disturbed on appeal

5

if it is supported by substantial and competent evidence. *Chandler*, 136 Idaho at 249, 32 P.3d at 143.

Here, the magistrate court rejected the CPA's tracing analysis--whether characterized as indirect or direct--because it could not be reliably verified on the record. The CPA acknowledged that his analysis relied primarily on tax returns and incomplete bank and credit card statements, did not trace inter-account transfers, and lacked bank statements for any accounts from the date of the marriage through January 1, 2021. Given those deficiencies, the magistrate court found the CPA's conclusion--that community income was fully exhausted--rested on assumptions rather than verifiable financial data. Without reliable baseline balances or complete documentation, the magistrate court concluded that Furman failed to establish, with reasonable certainty and particularity, that any remaining funds or acquired property were her separate property.

Furman's attempt to reframe her claim as direct tracing does not avoid the deficiencies identified by the magistrate court. Regardless of whether the CPA characterized his analysis as direct or indirect tracing, the magistrate court found that the analysis lacked affirmative proof connecting specific funds to a separate source. The CPA's analysis rested on the same unproven premise underlying the exhaustion method--that unidentified funds must be separate once community income was assumed to be exhausted--rather than on documented tracing of specific deposits or balances to a separate source. The absence of complete financial records, reliable baseline balances, and traced inter-account transfers prevented reliable tracing under either methodology.

The record likewise does not support Furman's contention that the magistrate court improperly rejected the CPA's analysis because it constituted expert testimony. The magistrate court did not reject the analysis because it involved professional judgment or discretionary classifications; rather, it found the analysis lacked a reliable factual foundation. Specifically, the CPA relied on incomplete financial records, failed to trace transfers between accounts, and lacked reliable baseline account balances from the beginning of the marriage.

Furman's reliance on *Houska* does not alter the analysis. In *Houska*, the Court analyzed the distinction between gross and net income in characterizing rents and profits from separate property. *Houska*, 95 Idaho at 569-70, 512 P.2d at 1318-19. Contrary to Furman's argument, the Court's analysis did not address whether tax returns alone are sufficient to establish tracing in the

absence of a complete underlying financial record. Even assuming Furman's legal classifications are correct, the evidentiary deficiencies in the record prevented reliable tracing of any alleged separate funds.

We need not define the outer limits of "reasonable certainty and particularity" in tracing cases because the evidentiary record here falls short. The CPA conceded that his analysis did not encompass all relevant financial records and lacked documentation establishing account balances at the time of marriage, leaving material gaps in the tracing analysis. Although tax returns and similar financial exhibits may assist a tracing analysis, their use here--combined with testimonial assumptions and incomplete financial records--did not provide a reliable basis to establish the separate character of the disputed property. Accordingly, the magistrate court's finding that Furman failed to meet her burden of establishing the separate character of any remaining funds is supported by substantial and competent evidence, and the district court did not err in affirming the magistrate court.

**B.      Reimbursement for Down Payments**

Furman alternatively argues--for the first time on appeal--that, even if the indirect tracing analysis fails, she is entitled to reimbursement for down payments made on real property using separate funds. Furman argues that the evidence shows the funds used for down payments could not have come from community income and that the magistrate court erred by failing to award reimbursement. Wiley argues that the reimbursement issue is waived and unsupported by the record.

Where a party appeals the decision of an intermediate appellate court, the appellant may not raise issues that are different from those presented to the intermediate court. *Wood v. Wood*, 124 Idaho 12, 16-17, 855 P.2d 473, 477-78 (Ct. App. 1993). Here, Furman did not argue the reimbursement theory before the magistrate court. At trial, Furman argued that the disputed accounts and real property were her separate property based on tracing and did not request alternative relief if that theory failed. Furman likewise did not present a reimbursement argument to the district court on intermediate appeal. Accordingly, because Furman raises her reimbursement claim for the first time on appeal, this Court will not consider it, and the district court did not err in affirming the magistrate court's decision.

### C. Mathematical Errors

Furman argues the district court erred by declining to correct several mathematical errors in the magistrate court's judgment and divorce decree, including alleged overstatements in property equity and account values and the omission of a claimed liability. Furman contends these errors could not have been raised at trial because they first appeared in the judgment and divorce decree and are therefore preserved for appellate review. Wiley argues that Furman failed to preserve these claims by not raising them before the magistrate court through a post-judgment motion and that the district court properly declined to address them on intermediate appeal.

To properly raise an issue on appeal, there must be either an adverse ruling by the court below or the issue must have been raised in the court below; issues raised for the first time on appeal will not be considered. *Skinner v. U.S. Bank Home Mortg.*, 159 Idaho 642, 650, 365 P.3d 398, 406 (2016). When a party believes the magistrate court committed factual or calculation errors, the proper remedy is a motion to amend or make additional findings under Idaho Rule of Family Law Procedure 801(b).

In this case, Furman did not raise any alleged mathematical or calculation errors before the magistrate court. Furman did not move to amend the findings or request additional findings under I.R.F.L.P. 801(b), despite the availability of that remedy, within fourteen days of the judgment and decree of divorce. On intermediate appeal, the district court correctly declined to address Furman's claimed calculation errors because they were not preserved below. Because the issue was neither raised nor decided by the magistrate court, there was no ruling for the district court or this Court to review. Accordingly, because Furman failed to preserve her claimed mathematical errors by not raising them before the magistrate court, the district court did not err in declining to address the issue on appeal.

### D. Attorney Fees and Costs

An award of attorney fees may be granted under I.C. § 12-121 and I.A.R. 41 to the prevailing party and such an award is appropriate when the court finds that the appeal has been brought, pursued, or defended frivolously, unreasonably, or without foundation.

#### 1. Attorney fees and costs on intermediate appeal

Furman argues the district court erred by awarding Wiley his attorney fees and costs on intermediate appeal, asserting her appeal was brought in good faith and raised legitimate issues, including the mathematical errors and the adequacy of her tracing evidence. Wiley argues that he was the prevailing party on intermediate appeal and that Furman's appeal merely sought to reweigh the evidence already resolved by the magistrate court, rendering the appeal frivolous and justifying the award of attorney fees.

On intermediate appeal, the district court concluded Wiley was the prevailing party. Specifically, the district court found that the "record indicates [Furman] did not present the documentation and analysis necessary to meet the burden of establishing her separate property. She attempted to shift the burden to [Wiley] on appeal and simply invites [the district court] to second guess" the magistrate court. Where an appeal merely invites the appellate court to second-guess the trial court's weighing of the evidence, an award of fees under I.C. § 12-121 is appropriate. The record supports the district court's determination. Accordingly, the district court did not abuse its discretion in awarding Wiley attorney fees and costs on intermediate appeal.

### 2.      Attorney fees and costs on appeal

Both parties request attorney fees and costs on appeal. In any civil action, this Court may award reasonable attorney fees to the prevailing party pursuant to I.A.R. 41. Wiley requests attorney fees pursuant to I.C. § 12-121, which permits a court to award reasonable attorney fees to the prevailing party when the case was brought, pursued, or defended frivolously, unreasonably, or without foundation. Where a nonprevailing party continues to rely on the same arguments rejected by the lower courts, without presenting new or persuasive authority or raising a genuine issue of law, an award of attorney fees under I.C. § 12-121 may be appropriate. *Plasse v. Reid*, 172 Idaho 53, 65, 529 P.3d 718, 730 (2023).

Although Furman reframes her arguments, her appeal substantially mirrors the tracing and valuation challenges she raised on intermediate appeal, without presenting new authority or identifying legal error in the district court's reasoning. It appears Furman seeks appellate reweighing of factual findings and credibility determinations reviewed under a deferential standard. That is not the role of this Court. *See Neustadt v. Colafranceschi*, 167 Idaho 214, 227, 469 P.3d 1, 14 (2020) (holding appellate courts in Idaho do not reweigh evidence). For these

9

reasons, an award of attorney fees to Wiley is appropriate. Because Furman is not the prevailing party, she is not entitled to attorney fees or costs.

## IV.
## CONCLUSION

Furman has failed to show that the magistrate court erred in rejecting her tracing analysis or in concluding that she did not establish the separate character of the disputed property. Furman did not preserve her reimbursement claim by raising it before either the magistrate court or the district court. Furman likewise failed to preserve her claims of mathematical error for appellate review. The district court did not err in awarding Wiley attorney fees and costs on intermediate appeal. Therefore, the decision of the district court, on intermediate appeal from the magistrate court, affirming the property division in the judgment and decree of divorce is affirmed. Attorney fees and costs on appeal are awarded to Wiley as the prevailing party.

Judge GRATTON and Judge HUSKEY, **CONCUR**.